IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ZAXBY'S FRANCHISING, LLC                              PLAINTIFF

v.                          Case No.

MJM FOODS, LLC                                        DEFENDANT

# EXHIBIT A1
Affidavit of Blake C. Bailey

**Motion for Temporary Restraining Order**

# AFFIDAVIT OF BLAKE C. BAILEY

STATE OF GEORGIA

COUNTY OF OCONEE

I, Blake C. Bailey, do hereby state on my oath as follows to the best of my knowledge, information and belief:

1. I am over the age of 18 years of age. I have personal knowledge of the statements in this affidavit.

2. I am currently employed as the Chief Financial Officer of Zaxby's Franchising, LLC, a Georgia limited liability company, which was formerly known as Zaxby's Franchising, Inc., a Georgia corporation (hereinafter and collectively "Zaxby's").

3. Zaxby's entered into a License Agreement with MJM Foods, LLC, a Georgia limited liability company ("MJM"), on November 22, 2005, for the operation of a Zaxby's Restaurant located at 2625 Stadium Boulevard, Jonesboro, Arkansas ("Restaurant").

4. MJM's first day of operation for the Restaurant was May 15, 2006.

5. The License Agreement with MJM expired by its terms on May 14, 2016.

6. During the 10-year term of the License Agreement, MJM routinely failed to meet its contractual obligations and consistently operated the Restaurant below the standards expected of a Zaxby's location and failed to comply with the Zaxby's "System."

7. On December 1, 2015, Zaxby's notified MJM in writing that the License Agreement would not be renewed because MJM had numerous defaults of the License Agreement, failed to comply with the standards of Zaxby's and had significant management issues, as well as other factors. (See Exhibit 1, a true and correct copy of the letter giving notice to MJM of Zaxby's decision not to renew the License Agreement.)

00313240.1/007927-000483

EXHIBIT A1

8. Zaxby's has not entered into a new license agreement with MJM for operation of the Restaurant and has no intention of entering into a new license agreement with MJM.

9. Despite expiration of the License Agreement and specific post-expiration obligations in Section XIV thereof, MJM continues its operation of the Restaurant without any legal right or authority to hold itself out as a franchisee of Zaxby's, to use Zaxby's registered Marks or to operate the Restaurant using Zaxby's System.

10. On May 16, 2016, our attorneys made a written demand upon MJM, through its counsel, to cease operations of the Restaurant. (See Exhibit 2, a true and correct copy of the letter from Zaxby's counsel demanding closure of the Restaurant.) Despite Zaxby's unequivocal demand, MJM continues operation of the Restaurant.

11. Zaxby's has spent considerable time, effort, energy and money towards the development of its brand, service marks, trademarks, slogans, logos, commercial symbols, trade dress, interior and exterior designs and specifications, motif, décor, and color scheme and other visual identification by which the Zaxby's System is identified and publicized. Zaxby's regularly engages in a variety of means of media, including television, internet, social media and print. Zaxby's has 769 branded restaurants throughout sixteen states. It has further made substantial investment in having standards of quality and consistency that it spends a great deal of time and money maintaining and protecting. A customer's experience at one branded restaurant can logically be expected to shape their view of the Zaxby's brand and other Zaxby's locations.

12. MJM must be made to immediately cease its operation of the Restaurant because: (a) MJM's below-standards performance and history as a franchisee has negatively impacted the Zaxby's franchise and will continue to do so; (b) MJM is using the registered marks and brand of Zaxby's without permission because the License Agreement has expired; (c) MJM has possession of equipment, signs, business materials, manuals, brochures and documents

containing Zaxby's name, marks, and other confidential information that are reserved for an authorized licensee; (d) Zaxby's has no ability to control further and additional damage to its reputation, marks or brand; (e) there is a significant risk that consumers will be confused and believe that the Restaurant remains an affiliated licensee of Zaxby's; and (f) Zaxby's has no way to protect its good-will and reputation because it has no right to inspect and enforce the requirements of the Zaxby's system and brand in connection with MJM's operation of the Restaurant and use of Zaxby's marks.

13. Pursuant to Section XIV of the License Agreement, MJM has numerous post-expiration obligations, including ceasing operation of the Restaurant, ceasing use of Zaxby's Marks, and returning all material, manuals, instructions, brochures, agreements and items related to operation of the Restaurant.

14. The failure to immediately stop MJM's operation of the Restaurant and unauthorized use of registered marks will result in irreparable and continuing damage to the reputation, good-will, marks and brand of Zaxby's.

FURTHER AFFIANT SAITH NOT.

Blake C. Bailey, Chief Financial Officer
Zaxby's Franchising, LLC

Subscribed and sworn to before me this 20th day of May, 2016.

Notary Public

My Commission Expires:

*Zaxby's Franchising, Inc.*
*1040 Founder's Boulevard*
*Athens, GA 30606*
*706.353.8107 phone*
*706.433.2330 fax*

December 1, 2015

| | |
|---|---|
| **VIA UPS OVERNIGHT DELIVERY, CERTIFIED MAIL RETURN RECEIPT REQUESTED AND FIRST CLASS MAIL** | **VIA UPS OVERNIGHT DELIVERY, CERTIFIED MAIL RETURN RECEIPT REQUESTED AND FIRST CLASS MAIL AND E-MAIL (BOB@GCDEVELOPMENTCOMPANY.COM)** |
| MJM Foods, LLC<br>1091 Founder's Boulevard, Suite D<br>Athens, Georgia 30606<br>Attention: President | Robert A. Sowinski<br>640 McDaniel Avenue<br>Greenville, South Carolina 29605 |
| **VIA UPS OVERNIGHT DELIVERY, CERTIFIED MAIL RETURN RECEIPT REQUESTED AND FIRST CLASS MAIL** | **VIA UPS OVERNIGHT DELIVERY, CERTIFIED MAIL RETURN RECEIPT REQUESTED AND FIRST CLASS MAIL** |
| Anthony A. Callendar<br>1708-C Augusta Street<br>Greenville, South Carolina 29305 | MJM Foods, LLC<br>Professional Park on Cleveland<br>3E Cleveland Court<br>Greenville, South Carolina 29607 |

RE: License Agreement by and between Zaxby's Franchising, Inc. ("ZFI") and MJM Foods, LLC ("Licensee") dated November 22, 2005 ("License Agreement") for the Location of 2625 Stadium Boulevard, Jonesboro, Craighead County, Arkansas ("Restaurant")

Dear Gentlemen:

First, we apologize for any delay in your recent request for us to consent to Robert A. Sowinski ("Sowinski") purchasing Anthony A. Callendar's ("Callendar") fifty percent (50%) membership interest in Arkansas Restaurant Group, LLC ("ARG"), the sole member of Licensee. While we conducted our typical analysis on the proposed transfer, the transfer request was complicated by the fact that Licensee requested to renew the License Agreement. In short, we were concerned about approving a transfer when at the same time we were evaluating and

552307.3
7927-0483



...
...

...

had not yet made a determination on the requested renewal of the License Agreement. As a result of this concern, we expedited our analysis on the requested renewal of the License Agreement.

Pursuant to Section II.B. of the License Agreement, we are hereby providing notice, at our option, of our election not to renew the License Agreement.

While this decision is left to the sole discretion of ZFI, we certainly understand that you would like to have some explanation of the decision to not renew the License Agreement. While the below explanation is not exhaustive, it provides a summary of factors that were significant in reaching a decision.

Throughout the term of the License Agreement, Licensee has: (1) failed to substantially comply with all of the terms and conditions of the License Agreement; (2) failed to operate and manage the Restaurant in full compliance with the "System"; and (3) defaulted in prior Multi-Restaurant Development Agreements with us, as described below.

Licensee has failed to timely pay monetary obligations owed to us, Zaxby's National Marketing Fund, Inc. ("ZNMF") and its Co-op on a least thirty-four (34) occasions since January 20, 2008. Licensee has failed to timely submit required financial information, as required by Section IX.C. of the License Agreement, on at least seven (7) occasions (including at least 24 different items) since February 24, 2009.

The Restaurant has a history of unacceptable scores on its Core Value Reports ("CVRs") which includes at least nine (9) failing scores since April 2, 2008. Licensee has failed to have certified general managers and other certified managers on numerous occasions. Licensee has continually failed to follow our recommendations and requirements to improve the operation of the Restaurant and compliance with the System.

The Equity Interest Owners of Licensee have made multiple transfers of their interests in Licensee without our consent. More specifically, Richard L. Best, Donald E. Best and A. Gary Avants each transferred a twenty-five percent (25%) ownership interest in Licensee without our consent. Subsequently, the existing Equity Interest Owners made a transfer of a sixty-six and two-thirds percent (66 2/3%) ownership interest in Licensee to Callendar without our consent. Callendar subsequently made a transfer of a sixteen and two-third percent (16 2/3%) membership interest to Sowinski without our consent.

Licensee executed two (2) Multi-Restaurant Development Agreements with us dated September 29, 2004 (the "MRDAs"). Licensee defaulted in its obligations pursuant to the terms of these MRDAs by failing to open Restaurants by designated times. We agreed to the terms of a mutual termination of these MRDAs as a result of these defaults.

Furthermore, Licensee has material management and decision making issues. More specifically, in Callendar v. Sowinski, Court of Common Pleas Thirteenth Judicial Circuit, State of South Carolina, County of Greenville, 2012-CP-23-5568, Callendar brought a complaint

against Sowinski, the Designated Principal of Licensee, for operating the Restaurant in violation of their Operating Agreement and wrongfully expending and taking over $500,000 of funds of Licensee for his personal use. Sowinski alleges that Callendar had only an economic interest and no right to participate in the decision making of Licensee. Callendar obtained a preliminary injunction against Sowinski as a result of these alleged actions. The court found that Sowinski's actions were causing immediate loss and damage to the Restaurants reputation and goodwill.

Additionally, ARG owns one hundred percent (100%) of six (6) other entities that collectively operate eight (8) other Zaxby's restaurants (the "Related Restaurants"). ARG has likewise failed to operate and manage the Related Restaurants in full compliance with the System and failed to substantially comply with all of the terms and conditions of their license agreements with us. Collectively, these Related Restaurants have failed to timely pay monetary obligations on at least eighty-eight (88) occasions, failed to timely submit required financial information on at least thirty-five (35) occasions (including at least 193 different items), failed CVRs on at least forty-six (46) occasions and failed to have an appropriate number of certified managers for at least one hundred nine (109) weeks. Likewise, the Related Restaurants have had many Equity Interest Owner transfers without our consent and have numerous state and local tax liens against them.

Additionally, Callendar also owned a thirty-three and one-third percent (33 1/3%) interest in Poultry in Motion, LLC, a previous licensee of a Zaxby's restaurant in Columbia, South Carolina. ZFI recently elected not to renew this license agreement as a result of numerous defaults in the license agreement, its failure to operate the restaurant in compliance with the System and other related defaults.

We have attached a copy of our letter dated December 7, 2009 to Sowinski and Callendar in response to the applications for additional license agreements. This letter indicates many of the defaults of Licensee and the Related Restaurants.

Licensee was dissolved by the Georgia Secretary of State on September 2, 2012. We have attached a copy of this Certificate of Dissolution.

Due to the longstanding, historical record of defaults by Licensee, Licensee's non-compliance issues with the System, multiple majority transfers of Equity Interest Owners of Licensee without our consent, significant management issues of Licensee, the dissolution of Licensee over three (3) years ago, and the same or similar issues with the Related Restaurants (including failure to pay state and local taxing agencies), we elect not to renew the License Agreement.

We do not know if our decision to not renew the License Agreement will have an effect on the proposed transfer of the membership interest of ARG from Callendar to Sowinski. If the parties anticipate proceeding with this proposed transaction, we request that the parties send us a copy of the Membership Interest Purchase and Sale Agreement as required by the License Agreement. After our receipt and review of the proposed Membership Interest Purchase and

Sale Agreement, we anticipate providing a quick response as we have already performed the typical and required analysis on this request.

Sincerely,

ZAXBY'S FRANCHISING, INC.

Amy C. Pritchett
Vice President of Franchise Development

# FORTSON, BENTLEY AND GRIFFIN, P.A.

J. EDWARD ALLEN (GA & TN)
ELBERT N. WHITMIRE, III, C.P.A.
G. MARCUS HODGE (GA & SC)
DAVID K. LINDER
ROY E. MANOLL, III
WALTER W. HAYS, JR.
KELLY C. HOLLOWAY
MICHAEL J. McCLEARY
V. KEVIN LANG
JEFFREY W. DELOACH
TREVOR T. JONES (GA & AL)
H. SCOTT LOWRY, JR.
KEVIN E. EPPS
ADAM B. LAND
WADE A. SCHUENEMAN
GREGORY O. DEBACKER

ATTORNEYS AT LAW
2500 DANIELL'S BRIDGE ROAD
BUILDING 200, SUITE 3A
ATHENS, GEORGIA 30606

(706) 548-1151

UPSHAW C. BENTLEY, JR.
(1924 – 2013)
EDWIN B. FORTSON
(1913-2007)
JOHN E. GRIFFIN
(1923-2002)
HERBERT T. HUTTO
(1933-1998)

OF COUNSEL
JODY JENKINS CORRY

May 16, 2016

*Via E-mail and*
*Federal Express*
Mr. Rick Johnson
The Johnson Franchise Law Firm, LLC
3440 Blue Springs Road, NW
Suite 201
Kennesaw, Georgia 30144

Re: License Agreement dated November 22, 2005 by and between Zaxby's Franchising LLC, a Georgia limited liability company, as successor to Zaxby's Franchising, Inc., a Georgia corporation ("ZFL") and MJM Foods, LLC, a Georgia limited liability company ("MJM") (the "License Agreement") for Restaurant located at 2625 Stadium Boulevard, Jonesboro, Craighead County, Arkansas (the "Restaurant")

Dear Mr. Johnson:

This letter is being sent to you as counsel for MJM relative to the above-referenced License Agreement, which expired by its terms on May 14, 2016.

Despite the fact that the License Agreement has expired and MJM has no legal right to utilize ZFL's marks or system in the operation of the Restaurant, ZFL has been advised that MJM continues to operate the Restaurant in violation of the law. Section XIV of the License Agreement specifically provides as follows:

> **Upon termination or expiration of this Agreement, all rights granted hereunder to Licensee shall forthwith terminate, and Licensee shall observe and perform the following:**
>
> **A. Cessation of Operation. Licensee shall immediately cease** to operate the Restaurant and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a franchisee or licensee of ZFI.
>
> **B. Cessation of Use of Marks. Licensee shall immediately and** permanently cease to use, in any manner whatsoever, any equipment, format, confidential methods, customer data base, programs, literature, procedures and techniques associated with the System, the name "Zaxby's" and any other

00310857 1/007927-000483

EXHIBIT 2

FORTSON, BENTLEY AND GRIFFIN
A PROFESSIONAL ASSOCIATION

Mr. Rick Johnson
May 16, 2016
Page 2

Marks. In particular, Licensee shall cease to use, without limitation, all signs, fixtures, furniture, equipment, promotional, marketing or advertising materials or displays, uniforms, stationery, forms and any other articles which display any of the Marks associated with the System.

C. **Cancellation of Name.** Licensee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Marks or any other trademark, trade name or service mark of ZFI, and Licensee shall furnish ZFI with evidence satisfactory to ZFI of compliance with this obligation within thirty (30) days after termination or expiration of this Agreement.

D. **ZFI's Right to Continue Operations.** In the event this Agreement is terminated, ZFI may, at its option, immediately enter the premises of the Restaurant and continue to provide services to customers of the Restaurant and apply receipts therefrom to debts owed to ZFI by Licensee. ZFI shall have no other obligations to Licensee in connection with ZFI's operation of the Restaurant following said termination.

E. **Non Usage of Marks.** Licensee agrees, in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Marks (including ZFI's trade dress), either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake or deception, or which is likely to dilute ZFI's exclusive rights in and to the Marks (including ZFI's trade dress) and agrees not to utilize any designation of origin or description or representation which falsely suggests or represents an association or connection with ZFI so as to constitute unfair competition.

F. **Prompt Payment Upon Default.** Licensee shall promptly remit all sums owing to ZFI and its Affiliates and all undisputed amounts owing to any approved vendor or supplier of ZFI. In the event of termination for any default of Licensee, such sums shall include all damages, costs and expenses, including reasonable attorneys' fees, incurred by ZFI as a result of the default, which obligation shall give rise to, and remain until paid in full, a lien in favor of ZFI against any and all of the personal property, machinery, fixtures, equipment and inventory owned by Licensee and on the premises of the Restaurant at the time of default.

FORTSON, BENTLEY AND GRIFFIN
A PROFESSIONAL ASSOCIATION

Mr. Rick Johnson
May 16, 2016
Page 3

    G. Payment of Costs.  Licensee shall pay to ZFI all damages, costs and expenses, including reasonable attorneys' fees, incurred by ZFI subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provision of this Section XIV. or any other obligation under this Agreement.

    H. Return of Materials.  Licensee shall immediately turn over to ZFI all copies of all materials in Licensee's possession relating to the System, including the Manual, all records, files, instructions, correspondence, customer database, brochures, agreements, disclosure statements and any and all other materials relating to the operation of the Restaurant in Licensee's possession, and all copies thereof (all of which are acknowledged to be ZFI's property), and shall retain no copy or record of any of the foregoing, excepting only Licensee's copy of this Agreement, any correspondence between the parties and any other documents which Licensee reasonably needs for compliance with any provision of law.  In addition to the foregoing, Licensee shall deliver to ZFI a complete list of all persons employed by Licensee during the three (3) years immediately preceding termination, together with a full and complete copy of all employment files of each employee on such list.  All costs of delivering all materials required by this Section XIV.H. shall be borne by Licensee.

    I. Assignment of Telephone Listings.  Licensee shall promptly notify the appropriate telephone company and all telephone directory listing agencies of the termination or expiration of its right to use any telephone number and any regular, classified or other telephone directory listings associated with any of the Marks and authorize the transfer of same to or at the direction of ZFI.  In connection therewith, Licensee shall execute a telephone assignment agreement in substantially the form of Attachment C attached hereto.  Licensee agrees to execute updated letters of direction to any telephone companies and telephone directory listing agencies directing termination and/or transfer of Licensee's right to use any telephone number associated with the Marks, which ZFI may hold until termination or expiration hereof.  Licensee acknowledges that as between ZFI and Licensee, ZFI has the sole right to and interest in all telephone numbers and directory listings associated with any Marks.  Licensee authorizes ZFI, and hereby appoints ZFI and any officer of ZFI as its attorney in fact, to direct the appropriate telephone company and all listing agencies to transfer all such listings to ZFI upon termination of this Agreement.

FORTSON, BENTLEY AND GRIFFIN
A PROFESSIONAL ASSOCIATION

Mr. Rick Johnson
May 16, 2016
Page 4

      J.    **Option to Purchase.** ZFI shall have the right, but not the obligation, to purchase any or all of the tangible assets of the Restaurant, including the signs, promotional, marketing or advertising materials or displays, supplies, forms, inventory, software, furniture or other items bearing the Marks, at Licensee's cost or fair market value, whichever is less. If the parties cannot agree on fair market value within a reasonable time, an independent appraiser shall be designated by ZFI. If Licensee objects to such appraiser's determination, Licensee may retain its own appraiser. If ZFI objects to the determination of Licensee's appraiser, a third appraiser shall be chosen by the first two appraisers (with his costs paid equally by ZFI and Licensee) and the determination made by the third appraiser shall be final and binding. ZFI's election to purchase provided for herein must be exercised by written notice to Licensee within thirty (30) days after termination or expiration of this Agreement. If ZFI elects to exercise any option to purchase provided herein it shall have the right to set off all amounts due from Licensee under this Agreement and the cost of the appraisal, if any, against any payment therefor.

      K.    **Covenant of Further Assurances.** Licensee shall execute any legal document that may be necessary to effectuate the termination hereunder and shall furnish to ZFI, within thirty (30) days after the effective date of termination, written evidence satisfactory to ZFI of Licensee's compliance with the foregoing obligations.

      L.    **Compliance with Covenants.** Licensee shall comply with all applicable covenants contained in Sections VIII. and XV. of this Agreement.

Based upon the unequivocal terms of the License Agreement, as well as common law prohibiting MJM from using of ZFL's marks without authority, ZFL hereby demands that MJM <u>immediately</u> cease and desist operation of the Restaurant. At the present time, ZFL is evaluating its option to purchase tangible assets of the Restaurant as provided for in Section XIV(J) of the License Agreement.

Please be advised that ZFL is prepared to immediately assert a cause of action against MJM in the event it fails to adhere to the post termination obligations set out in the Franchise Agreement, including, specifically, ceasing its operation the Restaurant. In order to provide a bright line as to when such action will be initiated, ZFL demands that MJM close the Restaurant immediately and provide it with a summary of the actions that MJM has taken to ensure its full compliance with its post-termination obligations on or before 12:00 EDT on Friday, May 20, 2016. In the event the Restaurant has not closed and that ZFL has not received the summary of actions from MJM by 12:00

FORTSON, BENTLEY AND GRIFFIN
A PROFESSIONAL ASSOCIATION

Mr. Rick Johnson
May 16, 2016
Page 5

EDT on Friday, May 20, 2016 or such summary of actions does not, in ZFL's sole discretion, demonstrate MJM's good faith efforts to comply with its post-termination obligations, ZFL has authorized the immediate filing of a cause of action against MJM seeking injunctive relief in the form of an order compelling MJM's performance of its post-termination obligations. In the event such action is necessary, ZFL will also recover its associated attorney's fees and costs in accordance with Section XIV(G) of the License Agreement.

We anticipate your client's prompt compliance with this letter.

Sincerely,

FORTSON, BENTLEY AND GRIFFIN, P.A.

Jeffrey W. DeLoach

cc:   Zaxby's Franchising, LLC

00310857.1/007927-000483